O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

DESHON PURVIS,

Petitioner,

v.

DAVID B. LONG, Warden,

Respondent.

Case No. CV 13-3346-RGK (DFM)

Final Report and Recommendation of United States Magistrate Judge

This Final Report and Recommendation is submitted to the Honorable R. Gary Klausner, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.[1]

///

///

///

[1] The Court has issued this Final Report and Recommendation to address issues raised by Petitioner in his objections to the original Report and Recommendation.

# I.

# BACKGROUND

## A. Procedural History

On August 10, 2010, a Los Angeles County Superior Court jury convicted Petitioner Deshon Purvis ("Petitioner") of 17 counts involving two underage victims: one count of kidnapping to commit rape, three counts of forcible sodomy, four counts of forcible rape, two counts of pimping a minor, one count of forcible oral copulation, and six counts of committing a lewd act on a child. Clerk's Transcript ("CT") 106-31. The jury also found special allegations of kidnapping true. Id. Petitioner was sentenced to a total term of 206 years, eight months to life in state prison. CT 156-66; 3 Reporter's Transcript ("RT") 1204-11.

Petitioner appealed his conviction to the California Court of Appeal, raising, inter alia, the claim that his sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment. On December 7, 2011, the state appellate court affirmed Petitioner's conviction in a reasoned opinion. Respondent's Notice of Lodging, Lodged Document ("LD") 1. On February 15, 2012, Petitioner's petition for review was summarily denied by the California Supreme Court. LD 2, 3.

On May 10, 2013, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody in this Court. Dkt. 1 ("Petition"). The original Petition raised two grounds for relief: (1) that his sentence violated the Eighth Amendment's prohibition against cruel and unusual punishment; and (2) that his trial counsel was constitutionally ineffective. Id. at 4-5.[2]

Respondent moved to dismiss the Petition on the ground that Petitioner's ineffective assistance claim was unexhausted because Petitioner

---

[2] All citations are to the CM/ECF pagination.

had not presented this argument to the California Supreme Court in his petition for review, which only raised the Eighth Amendment claim. Dkt. 18; see LD 2. After Petitioner failed to file a timely opposition, this Court issued an Order to Show Cause in which it advised Petitioner that it appeared that Petitioner's ineffective assistance claim was unexhausted and that therefore the Petition was a "mixed" petition subject to dismissal. Dkt. 19. The Court thus ordered Petitioner to either (a) file a stay-and-abeyance motion if he believed that he would be able to make the requisite three showings under Rhines v. Weber, 544 U.S. 269, 277 (2005); (b) file an Amended Petition deleting the unexhausted claim; or (c) show cause in writing why his Petition should not be dismissed without prejudice. Id. at 4. On January 17, 2014, in response to the Court's order to show cause, Petitioner filed a motion seeking a stay under either Rhines or Kelly v. Small, 315 F.3d 1063, 1070 (9th Cir. 2003), overruled on other grounds by Robbins v. Carey, 481 F.3d 1143 (9th Cir. 2007). Dkt. 21 ("Stay Motion") at 10-11. On February 3, 2014, this Court filed a Report and Recommendation recommending that Petitioner's motion for a stay be denied, that Respondent's motion to dismiss be granted, and that judgment be entered denying the petition and dismissing this action unless Petitioner filed an Amended Petition that was limited to his exhausted claim. Dkt. 24. The District Judge entered an order adopting that Report and Recommendation on March 18, 2014. Dkt. 25.[3]

///

[3] In his objections to the original Report and Recommendation, Petitioner re-argues the merits of his motion for a stay, maintaining that his trial counsel's ineffective assistance of counsel comprises "good cause" for his failure to exhaust his state remedies. See Dkt. 37 at 6-7. The Court fully considered this argument when it denied Petitioner's request for a stay, concluding that Petitioner's claim did not comprise "good cause" under Rhines. Dkt. 24 at 7.

On March 31, 2014, Petitioner filed a First Amended Petition. Dkt. 26 ("FAP"). The First Amended Petition omits the unexhausted ineffective assistance of counsel claim. Id. The FAP thus raises a single claim of error, that is, that Petitioner's 206-year sentence violates the Eighth Amendment because it is disproportionate to the charged crimes. FAP at 5, 43-47. Respondent filed an Answer to the FAP on June 11, 2014. Dkt. 31 ("Answer"). Petitioner has failed to file a timely reply.

**B. Summary of the Evidence Presented at Trial**

The underlying facts are taken from the unpublished opinion of the California Court of Appeal.[4] See LD 1 at 4-6. Unless rebutted by clear and convincing evidence, these facts are presumed correct. Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254 (e)(1). Petitioner has not attempted to overcome this presumption with respect to the underlying facts.

> Josephine O. (Josie) had recently moved from Oregon to Long Beach to live with her grandmother. At the time of the relevant events, Josie was 16 years old.
>
> On September 30, 2009, Josie skipped school to meet her friends at a hamburger stand. Once there, her friend Tanya introduced Josie to a man who provided them with marijuana, which the girls smoked. The man then took the girls to a house in Compton, where she met Antoinette W., who introduced herself to Josie as "Nicole." Nicole then described to Josie how she could make money from prostitution and drove Josie to a beauty supply store, after which they returned to the house in Compton.
>
> At this point, Petitioner entered the car Nicole was driving,

[4] In all quoted sections of the Report and Recommendation, the Petitioner's name has been replaced with "Petitioner."

and Josie asked him and Nicole to take her home.[FN] Petitioner responded that he would take Josie home "when he was done with her." Josie continued to insist that they take her home, but Nicole drove the three of them to a dress store, a store where Nicole got her nails done, and a third store where Nicole bought high heels. After Nicole made her purchases, she drove Josie to an area in Compton, and both Nicole and Petitioner described for Josie where to "stop and get picked up" by johns for prostitution.

[FN] Josie did not know Petitioner's name.

The three returned to the house in Compton, where Nicole told Petitioner that she did not want to go on a "date" that evening. In response, Petitioner hit Nicole in the face and pulled her hair, and she screamed. After Nicole returned from her date approximately two hours later, she and Petitioner took Josie to the Luxury Inn Motel, where they checked into a room.[FN]

[FN] At trial, the motel clerk confirmed that Petitioner signed the room registration slip for September 30, 2009, and October 1, 2009. The clerk also confirmed that Petitioner and Nicole (under an assumed name) signed several other registration slips between July and September 2009.

Once in the hotel room, Josie asked Petitioner if she could smoke a cigarette outside, but he told her to smoke in the bathroom. Josie entered the bathroom. Petitioner followed her in, locked the door, and then raped and sodomized her. After Petitioner violated Josie, he lay down next to Nicole on the bed and began fondling her.

The next day, October 1, Nicole learned that Petitioner had

had sex with Josie, and began brutally attacking Josie as Petitioner drove them down the freeway. Petitioner grabbed Nicole, hit her a couple of times, and then pulled over and threw Nicole out of the car. Afterwards, Petitioner drove Josie back to the motel, where he again raped and sodomized Josie.

That evening, Nicole returned to the motel, apologized to Josie, and told her that she (Josie) had a date with a customer in a room on the first floor of the motel. During the date, Nicole accompanied Josie as she orally copulated a man, who afterwards gave her a $100 bill. Nicole asked Josie to take the money to Petitioner, who was sitting on the stairwell outside, to get change. When she approached Petitioner with the money, he took it and asked Josie what sexual acts she performed on the man, and she told him.

On October 2, Petitioner, Nicole, and Josie were still at the motel. Petitioner made Josie take a bath with Nicole, and made Nicole stick her fingers in Josie's vagina. He then inserted his penis in Josie's vagina. After the bath, the three moved into the bedroom, where Petitioner made Nicole put her mouth on Josie's vagina while he had sex with Nicole. Petitioner then made Josie put her mouth on Nicole's vagina while Petitioner had anal sex with Josie. When Josie went to the bathroom afterwards, she noticed that she was bleeding from her anus.

On October 3, Petitioner learned that the police were searching for Josie. Nicole then called Josie's grandmother pretending to be a police detective and told her where she could find Josie. Petitioner and Nicole then dropped Josie off at a bus stop, from which her family subsequently picked her up.

> Two weeks later, on October 14, Petitioner was arrested and booked. When interviewed by detectives, Petitioner initially denied being a pimp, but admitted to taking cash from Josie and to numerous sexual acts with Nicole, whose real name was discovered to be Antoinette W. These sexual acts included oral, vaginal, and anal sex. Petitioner also revealed that he knew Antoinette was only fourteen years old at the time these acts occurred.

LD 1 at 4-6.

## II.

## STANDARD OF REVIEW

Petitioner's claim is subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Overall, AEDPA presents "a difficult to meet and highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt." Cullen v. Pinholster, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011) (citations and quotations omitted). Under AEDPA, federal courts may grant habeas relief to a state prisoner "with respect to any claim that was adjudicated on the merits in State court proceedings" only if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Although a particular state court decision may be both "contrary to" and "an unreasonable application of" controlling Supreme Court law, the two

phrases have distinct meanings. Williams v. Taylor, 529 U.S. 362, 391, 413 (2000). A state court decision is "contrary to" clearly established federal law if it either applies a rule that contradicts governing Supreme Court law or reaches a result that differs from the result the Supreme Court reached on "materially indistinguishable" facts. Early v. Packer, 537 U.S. 3, 8 (2002). A state court need not cite or even be aware of the controlling Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Id.

State court decisions that are not "contrary to" Supreme Court law may be set aside on federal habeas review only "if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law, or based on 'an unreasonable determination of the facts' (emphasis added)." Id. at 11. A state court decision that correctly identifies the governing legal rule may be rejected if it unreasonably applies the rule to the facts of a particular case. Williams, 529 U.S. at 406-08. To obtain federal habeas relief for such an "unreasonable application," however, a petitioner must show that the state court's application of Supreme Court law was "objectively unreasonable." Id. at 409-10. To warrant habeas relief, a state court's ruling must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770, 786-87 (2011). Put another way, a state court determination that a claim lacks merit "precludes federal habeas relief so long as fairminded jurists could disagree" on the correctness of that ruling. Id. at 786. Federal habeas corpus review therefore serves as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Id. (internal quotation omitted).

Here, Petitioner raised his Eighth Amendment claim on direct appeal, and that claim was denied by the California Court of Appeal in a reasoned

decision. See LD 1. This claim was then presented in Petitioner's petition for review, which the California Supreme Court summarily denied. Thus, for purposes of applying the AEDPA standard of review, the California Court of Appeal's decision on direct appeal constitutes the relevant state court adjudication on the merits for this claim. See Johnson v. Williams, --- U.S. ---, 133 S. Ct. 1088, 1094 n.1 (2013) (noting that federal habeas court "look[s] through" summary denial of claim to last reasoned decision from the state courts to address the claim).

## III.

## DISCUSSION

Petitioner contends that his 206 years and eight months to life sentence violates the Eighth Amendment's ban on cruel and unusual punishment because the sentence is grossly disproportionate to his offenses. FAP at 5, 43-47.

### A. Decision of the California Court of Appeal

The appellate court rejected Petitioner's contention that his sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment[5] in relevant part as follows:

> We begin by observing that Petitioner's sentence does not violate the federal Constitution's ban on cruel and unusual punishment. The Eighth Amendment forbids punishments that are grossly disproportionate to the offense. (Ewing v. California (2003) 538 U.S. 11, 23; see also People v. Cartwright, supra, 39 Cal.App.4th at p. 1135.) In Harmelin v. Michigan (1991) 501 U.S. 957, 965, the Supreme Court held that the Eighth Amendment

[5] The state appellate court also determined that Petitioner's sentence did not violate the California Constitution's ban on cruel and unusual punishment.

> contained no proportionality guarantee, expressly rejecting Solem v. Helm (1983) 463 U.S. 277, 290–292 and its three-part proportionality test analogous to that in Lynch. (See also Cartwright at p. 1135 [noting Harmelin's rejection of the Solem test].) As a result, Petitioner's reliance on Solem's three-part test is misplaced.
>
> Here, under the Harmelin standard Petitioner's sentence is not grossly disproportionate to his numerous offenses. Section 667.61, subdivision (i) sets forth mandatory consecutive sentences for certain sexual offenses if committed against the same victim on separate occasions. The trial court therefore calculated Petitioner's sentence according to this mandatory sentencing scheme. In Harmelin, the Supreme Court upheld a life sentence without the possibility of parole for a first-time offender charged with possessing 672 grams of cocaine. (Harmelin v. Michigan, supra, 501 U.S. at pp. 961, 1001–1009.) Petitioner's offenses are more severe than Harmelin's, yet Petitioner's sentence of 206 years and 8 months with the possibility of parole is no more severe than the sentence upheld as constitutional in Harmelin. Therefore, as in Harmelin, Petitioner's sentence is not grossly disproportionate and does not violate the Eighth Amendment's ban on cruel and unusual punishment.

LD 1 at 6-8.

**B. Analysis**

As a preliminary matter, to the extent that Petitioner contends that the California Court of Appeal erred in determining that his sentence did not violate the California Constitution's prohibition against cruel and unusual punishment, this claim is not cognizable on federal habeas review because it

solely presents a question of state law. See Estelle v. McGuire, 502 U.S. 62, 68 (1991). This Court is bound by a state court's interpretation of its own laws. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

A criminal sentence that is grossly disproportionate to the crime for which the defendant was convicted violates the Eighth Amendment's prohibition against cruel and unusual punishment. Solem v. Helm, 463 U.S. 277, 285 (1983). However, "[s]trict proportionality between crime and sentence" is not required. Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring); see also United States v. Bland, 961 F.2d 123, 128-29 (9th Cir. 1992). Rather, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." Harmelin, 501 U.S. at 1001 (Kennedy, J., concurring); see also Ewing v. California, 538 U.S. 11, 23 (2003). Therefore, with the exception of capital cases, successful Eighth Amendment challenges to the proportionality of a sentence have been "exceedingly rare." Rummel v. Estelle, 445 U.S. 263, 272 (1980); see also Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir. 2004). Furthermore, the Supreme Court has cautioned federal courts to be reluctant to review legislatively mandated terms of imprisonment for crimes "concededly classified and classifiable as felonies." Hutto v. Davis, 454 U.S. 370, 374 (1982); see also Rummel, 445 U.S. at 274. "Generally, so long as the sentence imposed does not exceed the statutory maximum, it will not be overturned on eighth amendment grounds." United States v. McDougherty, 920 F.2d 569, 576 (9th Cir. 1990); see also Belgarde v. Montana, 123 F.3d 1210, 1215 (9th Cir. 1997).

Considering the facts and circumstances, this is not one of those "exceedingly rare" cases in which Petitioner's sentence is grossly disproportionate to his crimes. See Ewing, 538 U.S. at 21; cf. Ramirez, 365

F.3d at 775 (concluding that sentence of 25 years to life for shoplifting was grossly disproportionate). As noted by the state appellate court, Petitioner's sentence was not unconstitutionally disproportionate given the gravity of the offenses, the fact that the crimes occurred over the course of three days, and because there were multiple underage victims. Furthermore, consecutive sentences were mandated pursuant to California Penal Code § 667.61 because forcible sex crimes were committed against the same victim on separate occasions. See 3 RT at 1205. Finally, the sentence imposed here of 206 years and eight months to life in prison did not exceed the statutory maximum. See Hutto, 454 U.S. at 374; Belgarde, 123 F.3d at 1215.

Petitioner alleges that his sentence is grossly disproportionate because he had a minor past criminal history. However, similar sentences have been upheld in cases of less serious offenses where the offender had either no prior criminal record or a negligible record. See, e.g., Harmelin, 501 U.S. at 994-95 (rejecting Eighth Amendment claim where petitioner with no prior felony record was convicted of possessing 672 grams of cocaine and received a mandatory life term without the possibility of parole); Hutto, 454 U.S. at 370-74 (rejecting Eighth Amendment challenge to 40-year sentence for possession and distribution of nine ounces of marijuana). Thus, it cannot be said that Petitioner's sentence was grossly disproportionate considering those upheld as constitutional in Harmelin and Hutto.

Petitioner's crimes were heinous ones, involving the sexual assault and pimping of minors. Given the violent and serious nature of Petitioner's crimes and the fact that he preyed on children sexually and financially, the California Court of Appeal's rejection of Petitioner's claim that the sentence was grossly disproportionate was not an unreasonable application of clearly established federal law. Habeas relief is accordingly not warranted on Petitioner's claim.

///

## IV.

## CONCLUSION

It therefore is recommended that the District Court issue an Order: (1) accepting this Final Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

Dated: October 20, 2014

DOUGLAS F. McCORMICK
United States Magistrate Judge